**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

TOMMY BAHAMA R&R HOLDINGS, INC.
d/b/a http://www.tommybahama.com,

      Defendant

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Tommy Bahama R&R Holdings, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Tommy Bahama R&R Holdings, Inc.'s business.

2.      Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3.      When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

4.      This case arises out of the fact that Defendant Tommy Bahama R&R Holdings, Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5.      Defendant Tommy Bahama R&R Holdings, Inc. (also referenced as "Defendant") owns and operates places of public accommodation which are upscale specialty retail stores under the brand name "Tommy Bahama." Tommy Bahama stores offer for sale to the public mens and women's apparel, eyewear, luggage, gift items[1], glassware, dinnerware, and furniture, which is heretofore, referenced as "Tommy Bahama brand merchandise."

6.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other

---

[1] candles, home scents, beach items, cookbooks, tech accessories, cigar items, and more

2

individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's places of public accommodation (which are Tommhy Bahama stores) not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

7.      This complaint also seeks compensatory damages to compensate Plaintiff Gil for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

8.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

9.      This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

10.       State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

11.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District.  Further, several of the Defendant's

sales establishments are located in the district[2].  In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign profit corporation.

12.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

13.     Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

14.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff suffers optic nerve damage; as such, he is legally blind. Further, Juan Carlos Gil suffers from cerebral palsy, is unable to walk and is confined to a wheelchair.   Therefore, Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

15.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

### Tommy Bahama R&R Holdings, Inc.

16.     Defendant Tommy Bahama R&R Holdings, Inc. (also referenced as Defendant) is the owner and operator the www.tommybahama.com website ("Website') which supports the chain of retail stores under the brand name "Tommy Bahama."

---

[2] Specifically, the Merrick Place store located at 320 San Lorenzo Avenue Coral Gables Florida

17.     Through its various subsidiaries or directly, Tommy Bahama Holdings, Inc. (which is the parent corporation of Defendant) and or Defendant owns and/or operates over one hundred sixty Tommy Bahama stores[3] around the world.

18.     Tommy Bahama stores are located throughout the United States, and Tommy Bahama brand merchandise is sold in in fine department and retail stores worldwide. There are ten Tommy Bahama stores located in the Southern District of Florida.

## FACTS

19.     Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

20.     At all times material hereto, Defendant Tommy Bahama R&R Holdings, Inc. was (and is) an organization which[4] owns and operates a chain of retail stores under the brand name "Tommy Bahama." Each Tommy Bahama store is open to the public as a retail store. As the owner and operator of retail stores, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Tommy Bahama R&R Holdings, Inc. is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

21.     By virtue of being a retail store open to the public, each of Defendant's Tommy Bahama stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E)

---

[3] sixteen of which also contain a restaurant and bar

[4] together with its parent corporation

and 28 C.F.R. Part 36. Defendant's Tommy Bahama stores are also referenced throughout as "Place(s) of Public Accommodation," "Tommy Bahama stores," or "store(s)."

22.     The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.tommybahama.com ("Website").

23.     Defendant's Website permits the public to obtain information on Tommy Bahama brand merchandise, store policies, and other information Defendant is interested in communicating to its customers and inquires purchase Tommy Bahama brand merchandise online and in stores, and another function is to provide auxiliary aids and services for the disabled.

24.     For all of the reasons as delineated hereinabove, clearly, the Website is an integral part of the provision of goods and by Defendant. By this nexus, the website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(E) of the ADA[5].

25.     Defendant's Website is a public store that is on-line, where the public can view and purchase Tommy Bahama brand merchandise.

---

[5] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

26.     Therefore, the Website is itself a sales establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(E).  As such, the Website must comply with all requirements of the ADA.

27.     The Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

28.     At all times material hereto, Defendant Tommy Bahama R&R Holdings, Inc. was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of their Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[6]

29.     Plaintiff is a customer who is interested in purchasing apparel such as Tommy Bahama brand mens clothing, which is offered through the Defendant's physical Tommy Bahama store locations, such as the Tommy Bahama store[7] in the Merrick Park shopping center located at Coral Gables 320 San Lorenzo Avenue, Coral Gables, Florida, near the Plaintiff's home.

---

[6] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

[7] which is owned/operated by the Defendant, according to tangible persona property information for Miami-Dade county

30.     Plaintiff had called the Defendant's Tommy Bahama store to inquire about the type of mens clothing and other merchandise available at the Tommy Bahama store. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

31.     During the month of September 2016, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to the Tommy Bahama brand merchandise available with the intent then going to the Tommy Bahama store located in Merrick Place, Coral Gables Florida to make a purchase.

32.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

33.     The Defendant's business contains access barriers that prevent the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendant's Website.

34.     The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to browse through Tommy Bahama brand merchandise for the purposes of purchasing merchandise for the purposes of making a purchase at Defendants' business.

35.     The Plaintiff attempted to locate an **Accessibility Notice**[8] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Defendant.

36.     The fact that Plaintiff could not communicate with Defendant left him excluded from accessing Defendant's physical store locations, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

37.     The Plaintiff's inability to access and use accessible auxiliary aids and services has impeded and obstructed Plaintiffs ability to enjoy the goods and services at the Defendant's locations. Plaintiff's inability to enjoy and learn about Defendant's Tommy Bahama brand merchandise resulted in a "virtual" concrete barrier which has precluded Plaintiff's purchasing Defendant's goods and services.  Plaintiff's inability to enjoy Defendant's inventory of goods and services prior to entering Defendant's Tommy Bahama stores has hindered, impeded and inhibited Plaintiff's entry to Defendant's Tommy Bahama stores.  Plaintiff has missed out on purchasing and enjoying Defendant's goods and services, and as such, Plaintiff has suffered particularized harm. Because Plaintiff cannot communicate with Defendant, Plaintiff has not had access to Tommy Bahama brand merchandise.

38.     Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical Tommy Bahama store locations in order to participate in the goods

---

[8] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

and services offered at Defendant's Tommy Bahama stores. Plaintiff's inability to communicate with or comprehend Defendant's Website has impeded Plaintiff's ability to patronize Defendant's physical Places of Public Accommodation.  As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

39.     On information and belief, Defendant has not initiated an ADA policy to insure full and equal use of their business by individuals with disabilities.

40.     On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

41.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

42.     On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

43.     On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

44.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

45.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.tommybahama.com website, Applications, and Digital Assets accessible to the visually impaired community.

46.     On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[9].

47.     On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

48.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

49.     On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

50.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

51.     Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

52.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American

---

[9] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

civic and economic life. That mandate extends to internet shopping websites, such as the www.tommybahama.com website.[10]

53.     On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

54.     On information and belief, Defendants are aware of need to provide full access to all visitors to its www.tommybahama.com website.[11]

55.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

56.     Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

57.     According to the National Federation for the Blind[12], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

58.     According to Statistic Brain Research Institute[13], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans

---

[10] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[11] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)
[12] Statistics for 2012, see http://www.NFB.org/blindness-statistics

that have browsed online stores such as www.tommybahama.com and have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

59.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

60.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

61.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

62.     Plaintiff utilizes his personal computer to access websites such as the Defendant's www.tommybahama.com website. Plaintiff uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff stores his personal information and retains his browsing history on his personal computer.

63.     Throughout the Website, the Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

---

[13] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

64.     The Defendant informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's "joint marketing partners" (without so naming those other companies), (ii) service providers (without so naming the service providers), (iii) other third parties (without so naming the third parties), and (iv) to law enforcement officials (if so required to be transmitted by said law enforcement).

65.     The Plaintiff was unable to comprehend Defendant's Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of the Defendant's installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

66.     Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer.  It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history[14].  As such, through its Website, Defendant has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

---

[14] As delineated in the "Cookies" section of the Defendant's Website

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

67.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-61 above.

### Requirement for Effective Communication

68.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

69.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

70.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

71.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

72.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

73.     By virtue of the fact that Defendant's Tommy Bahama stores are open to the public, each retail store is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(E).  The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

74.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a retail store, the visually impaired have no access to the goods and services of that retail store, which is both a Public Accommodation and a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

75.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[15]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

---

[15] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at

76.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Gil v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

77.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

78.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[16]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

---

https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

[16] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO

79.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.tommybahama.com website, as defined within §12181(7)(E), and is subject to the ADA.

80.     Additionally, www.tommybahama.com is a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(E) as it is an on-line store. Further, the Website also serves as an integral part of Defendant's Tommy Bahama stores by providing the public information on the various locations of Tommy Bahama stores, and offers the public the ability to be educated as to the line of Tommy Bahama brand merchandise sold on the Website, and sold in Tommy Bahama stores, via independent retailers, and in fine department stores, which provides the public the ability to determine if they wish to physically patronize the Defendant's physical store locations and/or to purchase Tommy Bahama brand merchandise online through the Website.

81.     In addition, Defendant's representatives within its physical store locations have referred customers to Defendant's Website for additional information, as the Website provides information regarding Tommy Bahama brand merchandise, such that the Website is an integral part of the public's needs with respect to Defendant's business.

82.     By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on goods and services instead of

---

(entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

providing such information at the physical store locations, the Website has been rendered an integral part of Defendant's physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business locations.

83.     It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

84.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[17] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[18] (emphasis added). For example, Congress identified "information

---

[17] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[18] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

19

exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

85.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

86.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

87.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

88.     As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Tommy Bahama physical store locations as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

89.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

90.     A sampling review of just part of the Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

91.     Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

21

92.     More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

93.     Further, the Website does not offer include the universal symbol for the disabled[19] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

94.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

95.     The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website are ongoing.

**Violations of the ADA**

96.     As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

---

[19]  ™ , or HTML "Accessibility" link for those individuals who are visually impaired

97.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a)   Require Defendant Tommy Bahama R&R Holdings, Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.tommybahama.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)   Require Defendant Tommy Bahama R&R Holdings, Inc. to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.tommybahama.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)   Require Defendant Tommy Bahama R&R Holdings, Inc. to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Tommy Bahama stores (locations) and becoming informed of and purchasing Tommy Bahama merchandise online and in Tommy Bahama stores. During that time period prior to the Website being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and

services made available to the public through Defendant's Website and through Defendant's physical store locations.

98.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Tommy Bahama R&R Holdings, Inc.

## COUNT II – TRESPASS

99.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–66 above.

100.    Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's www.tommybahama.com website.  Plaintiff's personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's Website, which the Plaintiff has navigated.

101.    Plaintiff was unaware that Defendant's Website was placing software on his computer due to his inability to effectively communicate with Defendant's Website.

102.    Plaintiff did not consent to the placement of software on his personal computer; therefore Defendant has committed a trespass against Plaintiff.

103.    By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

104.    Defendant's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

105.     At the Website location (http://www.tommybahama.com/privacy-policy, the Defendant states the following:

### *Our Use of Cookies*

*We regularly use browser tracking cookies. […]*

*Through our use of cookies, we may also track and maintain the identity of the website you visited immediately prior to visiting our website.*

106.     As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, the Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)     By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)     By infringing on Plaintiff's right to exclude others from his computer;

c)     By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d)     By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)     By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

107.     For all of the foregoing, the Plaintiff has no adequate remedy at law.

## **DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Tommy Bahama R&R Holdings, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Tommy Bahama R&R Holdings, Inc. has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant Tommy Bahama R&R Holdings, Inc. to update its www.tommybahama.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant Tommy Bahama R&R Holdings, Inc. to clearly display the universal disabled logo[20] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.tommybahama.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA

---

[20] 

expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e)  The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f)  The Court enter an Order directing Defendants to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

g)  The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h)  The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i)  The Court to award injunctive and equitable relief as applicable, including:

    i.  prohibiting Defendant from engaging in the acts alleged above;

    ii.  requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have

27

knowledge and notice of Defendant's placement of software on their computer(s); and

iii.    requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

j)  The Court award damages in an amount to be determined at trial;

k)  The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; and other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices complained of herein; and

l)  That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 3rd day of April, 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*